IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TAKEELA SAUNDERS** | : |
| | : |
| v. | :   **Civil No. JKS 09-2330** |
| | : |
| **WAL-MART STORES, INC.** | : |
| | : |

**MEMORANDUM OPINION**

Plaintiff Takeela Saunders originally filed this action in the Circuit Court for Prince George's County, alleging negligence on the part of Defendant Wal-Mart Stores, Inc. (Wal-Mart). (Dkt. No. 2). Wal-Mart removed the action to the United States District Court for the District of Maryland. (Dkt. No. 1). Pursuant to consent of the parties, the case was referred to me for all further proceedings. (Dkt. No. 13). Presently pending and ready for resolution is Wal-Mart's motion for summary judgment. (Dkt. No. 15). No hearing is deemed necessary. For the reasons set forth below, Wal-Mart's motion will be granted.

**I.      Background.**

The following facts are either undisputed or are construed in the light most favorable to Ms. Saunders. On March 2, 2007, Ms. Saunders and her husband had gone to the Wal-Mart store located at 8745 Branch Avenue in Clinton, Maryland, to purchase a vacuum cleaner. (Takeela Saunders Dep. at 22). When they discovered that the vacuum cleaner they sought was out of stock, a Wal-Mart employee told them where to find a comparable vacuum cleaner. *Id.* at 22-23. While Ms. Saunders's husband attempted to locate the vacuum cleaner, Ms. Saunders went to a different area of the store to look for stove top cleaner. *Id.* at 24. Ms. Saunders did not find the cleaner in one aisle, and as she turned the corner to enter the next aisle, she slipped and fell in a liquid she later learned was concentrated Pine-Sol. *Id.* at 24-25. Ms. Saunders does not

know how the liquid came to be on the floor, or how long it was there prior to the incident. *Id.* at 27.

Ms. Saunders's husband Quinton Saunders similarly testified that he went to the store with his wife to purchase a vacuum cleaner. (Quinton Saunders Dep. at 9). Soon after separating from his wife, Mr. Saunders was paged to report to the cleaner aisle, where he found Ms. Saunders on the floor. *Id.* at 11-12. The whole area was covered with a yellowish liquid that smelled like pine. *Id.* at 13. Mr. Saunders did not know how the liquid came to be on the floor, or how long it had been on the floor prior to the incident. *Id.* at 22.

When Mr. Saunders arrived to attend to his wife, he noticed that a Wal-Mart manager, Ms. Patterson-Baker, was taking pictures of the scene. (Dkt. No. 17, Ex. 3 at ¶ 3). Mr. Saunders took out his cell phone and took several pictures until he was told to stop by Wal-Mart manager Patterson-Baker. (Quinton Saunders Dep. at 15, 18). As Mr. Saunders waited for the ambulance to arrive for Ms. Saunders, he noticed a Wal-Mart employee pulling a handcart loaded with supplies near the aisle where his wife had fallen. (Dkt. No. 17, Ex. 3 at ¶ 4). Mr. Saunders saw a yellowish liquid leaking from the cart as it moved along. *Id.* After his wife was placed in the ambulance, Mr. Saunders returned inside the store and saw that the same liquid remained on the floor and had not been cleaned up. *Id.* Wal-Mart's Safety Sweep Guidelines direct employees to pay particular care to aisles containing chemicals, to mark and clean up spills promptly, and recommend a Safety Sweep at least three times per day. (Dkt. No. 19, Ex. 4).

Ms. Saunders contends that Wal-Mart has not provided the photographs taken by the Wal-Mart manager, or any security videos, and refused to identify the individual responsible for cleaning and inspecting the area where Ms. Saunders fell. (Dkt. No. 17 at 4). In response, Wal-

Mart states that it advised Ms. Saunders during discovery that it has no photographs, surveillance videos, or cleaning logs. (Dkt. No. 18 at 2-3).

## II.     Standard of Review.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962). The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. *Pulliam Invest. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting the burden of raising a genuine issue of fact by substantial evidence to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A party who will have the burden of proof at trial, on the other hand, must make a showing sufficient to establish the existence of the essential elements of its claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). To defeat the motion, the party opposing summary judgment must submit evidentiary materials showing facts on the basis of which the finder of fact could reasonably decide the case in its favor. *Anderson*, 477 U.S. at 252. If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Id.*

**III.    Discussion.**

The Court of Appeals of Maryland[1] has adopted the rule in the Restatement (Second) of Torts § 343 (1965) for the general duty a private landowner owes to its invitees. *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 263 (2003); *Rawls v. Hochschild, Kohn & Co., Inc.*, 207 Md. 113, 117 (1955). Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Thus, a shopkeeper must exercise ordinary care to keep the premises in a reasonably safe condition, and is liable for injuries sustained by a customer in consequence of the failure to do so. *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 231-32 (1965). "However, the proprietor of a store is not an insurer of the safety of his customers while they are on the premises and no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store." *Moulden*, 239 Md. at 232; *Rawls*, 207 Md. at 118. "To recover in an action for damages, the plaintiff must show that the defendant was guilty of negligence which produced the particular injury alleged." *Moulden*, 239 Md. at 232; *Rawls*, 207 Md. at 118-19.

The burden is on the plaintiff "to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence." *Moulden*, 239 Md. at 232; *Rawls*, 207

---

[1] Maryland substantive law applies in this diversity action.

Md. at 119.  To establish constructive knowledge, the plaintiff must show how long the dangerous condition has existed.  *Joseph v. Bozzuto Mgmt Co.*, 173 Md. App. 305, 316 (2007) (citing *Maans v. Giant*, 161 Md. App. 620, 632 (2005)).  This rule, known as "time on the floor" evidence, is relevant as to notice to the storekeeper, as well as the issue of what care was exercised.  *Bozzuto*, 173 Md. App. at 317 (quoting *Maans*, 161 Md. App. at 639-40).

      Here, there is no evidence that Wal-Mart created the dangerous condition which caused Ms. Saunders's fall.  Ms. Saunders contends that a jury could find that Wal-Mart created the condition which caused her accident based on her husband's statement that as they awaited the ambulance he saw a Wal-Mart employee pushing a cart that leaked a similar substance and the lack of evidence that a broken or open bottle was found at her accident site.  However, Mr. Saunders's observation is not contemporaneous in time to the accident, and there is no evidence that any cart was in the area where Ms. Saunders fell prior to her accident.  In addition, Mr. Saunders's description of a leaking, moving cart is not consistent with the puddle stretching across the aisle in which Ms. Saunders fell.  It would be sheer speculation to infer that a leaking cart left the large puddle in which Ms. Saunders fell.  Indeed, Mr. Saunders himself testified that he did not know how the spill in which his wife fell got on the floor.  Similarly, the lack of a broken or open bottle does not support an inference that a Wal-Mart cart created this puddle.

      Ms. Saunders contends that an adverse inference should be drawn against Wal-Mart because it failed to produce photographs, inspection logs, or video footage of the area.  However, no adverse inference flows from the mere absence of evidence.  The spoliation of evidence rule, administered at the discretion of the trial court, *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995), allows an adverse inference to be drawn against a party who destroys or fails to produce or preserve relevant evidence.  *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450

(4th Cir. 2004) (citing *Vodusek*, 71 F.3d at 155-56).  An adverse inference may be obtained by "showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction."  *Hodge*, 360 F.3d at 450 (quoting *Vodusek*, 71 F.3d at 156).  Ms. Saunders offers no evidence that inspection logs or video footage ever existed.  She has evidence that a Wal-Mart manager took photographs of the scene, but makes no showing that post-incident photographs would be relevant; the photographs taken by Mr. Saunders similarly do not contain any evidence that Wal-Mart caused or knew of this spill.  Because the evidence does not support a finding that Wal-Mart engaged in willful conduct to cause the loss or destruction of relevant evidence, no adverse inference can be drawn.

Absent evidence that Wal-Mart created the dangerous condition or had actual knowledge of it, Ms. Saunders must establish constructive knowledge by presenting "time on the floor" evidence.  Acknowledging that she cannot provide direct "time on the floor" evidence, Ms. Saunders argues that the substance should have been discovered because it covered a large area and extended across the aisle.  (Dkt. No. 17 at 4).  Of course, if the spill covered the entire breadth of the aisle, any inference that a Wal-Mart employee should have seen it would raise the similar inference that Ms. Saunders should have seen it.  *See Maans*, 161 Md. at 632 n. 5.  In any event, the size or nature of the spill is not a substitute for "time on the floor" evidence.  *See Rawls,* 207 Md. at 122-23 (water on stairway); *Maans,* 161 Md. App. at 631-32 (water in checkout area); *Bozzuto*, 173 Md. App. at 310-11 (oily spot on tile floor).  Similarly, in *Moulden*, where the plaintiff slipped on a mashed, dry string bean located on the floor outside the produce area in a grocery store, there was insufficient evidence to take the case to a jury because the plaintiff could not show how long the bean had been on the floor; despite its condition, the bean could have fallen from a grocery cart moments before the accident.  239 Md. at 233.  In all of

these cases, the court held that the plaintiff did not establish the property manager's constructive knowledge of the condition because plaintiff offered no evidence as to how long the substance was on the floor.

Ms. Saunders notes that Wal-Mart requires its employees to pay particular attention to HBA and chemical aisles and requires each store to have a floor care program, thus suggesting that Wal-Mart failed to make reasonable inspections. However, a failure to make reasonable inspections cannot establish liability because it does not show that by reasonable inspections prior to the accident the property owner would have discovered the condition. *See Maans*, 161 Md. App. at 632. As in *Moulden*, the substance in which Ms. Saunders fell could have been spilled by a customer only moments before, and thus before a Wal-Mart employee could have reasonably been expected to discover it. The evidence presented by Ms. Saunders is accordingly insufficient to establish that Wal-Mart had constructive notice of the condition.

## IV.    Conclusion.

There is no evidence upon which a reasonable jury could find that Wal-Mart caused or knew of the spill, or negligently failed to discover it. Accordingly, Wal-Mart's motion for summary judgment will be granted. A separate order will be entered.


Date:  April 5, 2010                                           /S/
                                                  JILLYN K. SCHULZE
                                                  United States Magistrate Judge